COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JEFFERY DEE TAYLOR, | § | |
| | | No. 08-08-00134-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 354th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Hunt County, Texas |
| Appellee. | § | |
| | | (TC#23,271) |
| | § | |

## O P I N I O N

This is an appeal from a jury conviction for the offense of aggravated sexual assault of a child younger than 14 years of age. The jury assessed punishment at fifty years' imprisonment and a $10,000 fine.[1] We affirm.

## BACKGROUND

At trial, the nine-year-old complainant testified using the pseudonym of Jane Star. She was born on June 10, 1998. She stated she was in the fourth grade in school. She had always lived in Greenville, Texas. Jane stated that Appellant was her father, and he had sexually assaulted her at a house in Greenville inhabited by herself, her mother, and Appellant when she was between the ages of three and five at a time period between 2001 through 2004. Jane told her mother of the incidents in December of 2004. Her mother, Debbie Taylor, informed the police in January 2005.

Jane testified that her private parts consisted of her "front private" or vaginal area, and "back private" or buttocks. She drew a picture of a girl and marked the areas. She also identified the

---

[1] Appellant was also indicted for another count of aggravated sexual assault of a child, and a count of indecency with a child. The jury returned not guilty verdicts on those two counts.

mouth as being the "top private."  She referred to the male private parts as the mouth being the "top private," the front "bottom private" being the penis, the "middle private" as being the hands, and the back "bottom private" as being the buttocks.  Using this terminology, she indicated to the jury that Appellant touched her vagina and buttocks with his mouth.  She stated that this happened more than once, but she did not remember the exact number of times.

Jane testified that her first bedroom was a converted closet which had a toddler bed with "Winnie the Pooh" blankets.  During the course of the molestations, she moved into her sister Rachel's old room.  On one occasion, she was molested in the "Pooh" bed.  An individual named Jeremy Lopez who was a friend of her father's was also there.  On one occasion she had to throw out her bloodied panties as a result of Appellant doing sexual things to her.  Jane related that she told her mother and her sister about the molestations because she had gotten into trouble for sexually acting out with her young cousin.  Jane testified that she initially blamed her cousin, but she admitted that she had lied about her cousin being at fault.  She testified that due to anger at her father for the molestations, she stopped calling him "Dad" and decided on her own to call him Jeffery Taylor.

Ginger Brooks testified that she was a licensed professional counselor in private practice.  She had a masters degree in counseling and she had testified as an expert in child sexual abuse on many occasions, and in many venues.  She met with Jane in January of 2005 upon referral by the Child Advocacy Center in Hunt County.  She had presided over about seventy sessions with Jane at the time of trial.  In the course of the counseling sessions, Jane wrote a number of notes and drew various paintings and drawings which were admitted into evidence.

Jane had related to Brooks that the sexual abuse occurred at the house in Greenville, Texas.  Jane made a list of sexual abuse by Appellant, and indicated in her own terms that he licked her vagina several times, and he put his penis in her vagina, and she had blood in her panties.  She stated

that she was afraid of Appellant due to the fact that he had threatened to kill her and her mother if she told anyone about the abuse. Jane stated that she believed that would happen. She was afraid of Appellant, and she worried about seeing him.

During the course of the counseling sessions, Jane stated to Brooks that Appellant had touched her more than twelve times, and she wanted to end her association with Appellant. She was afraid of Appellant and had anger towards him. Jane also stated that she had seen Appellant put on her mother clothes and say "girl words" while he wore makeup.

Brooks gave her opinion to the jury that Jane is a chronically sexually-abused child. Brooks related that Jane exhibited the symptoms of sexual abuse by exhibiting behavioral problems, social problems, fear, psychosomatic problems, sleep disturbance, post-traumatic stress disorder, separation anxiety, sexual acting out, and anger towards the abuser. Brooks indicated that Jane's teacher had written a note indicating behavioral problems. Jane stated she did not want to call her father "Dad" and she wanted Brooks to refer to her father as "Jeffery Taylor."

When Jane first mentioned the sexual abuse to Brooks, Jane was asked to draw a picture of the time she was hurt. She drew a picture of herself in a bed with flowers on it and with railings on the side of the bed. Later, she also indicated on pictures of an anatomically correct boy and girl where Appellant and Jeremy Lopez touched her and where her granddad had sexually touched her mother.

She indicated to Brooks that an individual named Jeremy Lopez had abused her as well as her uncle. She stated that Appellant and Lopez were going to kill her and they had placed a piece of metal into her private area. Brooks also stated that Jane had drawn a picture showing abuse by another man and her cousin being present. Jane had stated to Brooks that Jeremy Lopez drove a blue or Black Dodge truck. Brooks stated that girls Jane's age do not normally know models of trucks.

In January of 2006, Jane drew a drawing showing where her grandfather had touched her mother in a sexually abusive manner. Brooks did not discuss the matter of Debbie Taylor being sexually abused with Jane. Brooks testified that children can be influenced and they can expand on something that occurred and create additional details.

Appellant called his wife, Jane's mother, to the stand. She related that she and Appellant had separated several months before Jane made her outcry. She testified that Jane made the outcry statement to her after she was caught touching her cousin inappropriately. Jane told her mother that Appellant had licked and kissed her crotch. Jane told her mother that the sexual abuse began before the family went on a trip to Mississippi, and continued thereafter.

Jane's mother stated that she worked as a nurse and had worked double shifts when she lived with Appellant. She stated that until Jane was four or five years old, Jane slept in a toddler bed in the master bedroom closet that had been converted into a nursery. It was called the "Pooh" bed. She testified that she was aware that Appellant dressed in women's clothing and wore her bras and panties. Jane's mother stated that Jane acted out at school and at home with anger and grief regarding Appellant's actions.

Jane's mother testified that she had been assaulted by her father and she had told Jane of the abuse, but she did not go into any details of the abusive acts with Jane. This was stated to Jane after she made her outcry. She testified that she had spoken to Ginger Brooks about the forensic SANE test and the fact that there was no evidence of scarring.

Appellant testified in his own defense. He stated that Jane was his daughter, and he had lived with Jane and her mother in Greenville, Texas. He testified that he had converted the walk-in closet in the master bedroom into a bedroom for Jane. She had a plastic toddler bed with rails on it. Appellant stated that he would look after Jane for several days at a time while his wife worked as

a nurse.

Appellant admitted to wearing his wife's clothing around the house; although, he asserted that Jane never saw him wearing his wife's dresses, panties, and bras. Appellant testified that Jane was imaginative causing her to make up the allegations of sexual abuse. He stated she was lying. Appellant denied knowing any individual named Jeremy Lopez. Appellant testified that he thought his wife had put Jane up to stating some of the accusations she made. Appellant denied that he had ever sexually assaulted Jane.

## DISCUSSION

In Appellant's sole issue on appeal, he maintains that the evidence is factually insufficient to support the conviction. Specifically, Appellant asserts that the evidence presented by the State is so weak that the jury's verdict is clearly wrong and manifestly unjust. Further, considering the conflicting evidence, the jury's verdict, though legally sufficient, is, nevertheless, against the great weight and preponderance of the evidence.

In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In performing appellate review, the reviewing court is to give due deference to the fact finder's determinations. *See Johnson*, 23 S.W.3d at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony . . . ." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Accordingly, the question we must consider in conducting a factual sufficiency review is whether a neutral review of

all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

Under the first prong of J*ohnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong, we cannot rule that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before issuing a finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to indicate, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

We are guided by three basic ground rules in conducting a factual-sufficiency analysis. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). First, we must remain cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury. *Id.* at 705-05. While we may disagree with the fact finder, we must afford the appropriate deference in order to avoid substituting our judgment for that of the jury. *Id.* at 705. Second, our opinion should clearly lay out and explain how the evidence supporting the verdict is too weak on its own, or state how the contradicting evidence greatly outweighs evidence in support of the verdict. *Id.* Third, we review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict. *Id .*

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child younger than fourteen years of age by any

means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009). In this case, the indictment alleged that Appellant penetrated the complainant's female sexual organ with his mouth.

It is well established that a child victim's testimony alone is sufficient evidence to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Perez v. State*, 113 S.W.3d 819, 837-38 (Tex. App.–Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008). Accordingly, Jane Star's testimony, if believed by the jury, is factually sufficient to prove that Appellant committed aggravated sexual assault as alleged in the indictment.

In stating that neither prong of the *Johnson* case has been met, Appellant attacks the credibility of Jane Star by contending that the State failed to substantiate that there had been physical injury, the existence of the bloody panties, or the involvement of other parties in the sexual abuse. Appellant also asserts that there was no evidence of any forensic assessment being done. Further, Appellant asserts that the child was very cognizant of the abuse her mother suffered due to the specific drawing Jane drew of the abuse done to her mother by her grandfather. Appellant asserts that the paucity of evidence of acting out is reflected by the fact that only one note from the school indicated behavioral problems. Appellant also maintains that the jury was biased by the testimony concerning his cross-dressing.

In essence, Appellant asserts that the evidence indicates that Jane's mother had access to her after the separation and coached Jane regarding her allegations of sexual abuse. In furtherance of that contention, he asserts that with the existence of sexual abuse within the family, it is more likely than not that the child victim was coached by her mother.

Initially, we note that it is within the jury's province to believe Jane's testimony and reject

all of the evidence to the contrary.  *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).  Furthermore, the fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, or some or none of the testimony presented.  *Chambers*, 805 S.W.2d at 461. Also, to the extent that Appellant's argument is directed at the credibility of the complainant, that is a matter which is solely the responsibility of the jury to determine.  We are instructed to afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.  *Lancon*, 253 S.W.3d at 705.  The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record.  *Id.*; *Marshall v. State* 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Regarding the lack of evidence indicating physical injury, we note that the jury chose to convict Appellant for having penetrated Jane's sexual organ by his mouth.  The jury chose to reject the other allegations in count II and III that Appellant penetrated her sexual organ with his penis or a massaging device.  Furthermore, Jane testified that she was sexually assaulted and was aware of how the assaults occurred.  There was evidence regarding her bedroom and bed that was corroborated by both her mother and Appellant.  Appellant had the opportunity to commit the offenses as he was alone with Jane for lengthy periods while her mother was working.  Jane's counselor testified that Jane exhibited the characteristics of a sexually-abused child.  Jane's mother testified that Jane acted out at school and at home with anger and grief regarding Appellant's actions. Regarding the absence of evidence substantiating the participation of other individuals in the sexually abusive conduct, the jury could have rejected that testimony given the testimony concerning the propensity for children to elaborate about sexually abusive events.  Furthermore, it was for the jury to determine the credibility of complainant, and to determine which portions of her testimony to believe.  We do not find that the evidence is so weak that the jury's verdict is clearly wrong and

manifestly unjust.  Further, we find that the verdict is not against the great weight and preponderance of the evidence.  The evidence is factually sufficient to support the conviction.  Appellant's sole issue is overruled.

**CONCLUSION**

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

March 10, 2010

Before McClure, J., Rivera, J., and Chew, Judge
Chew, Judge, sitting by assignment

(Do Not Publish)